## Case No. 15,150.

### UNITED STATES v. FOUR PART PIECES OF WOOLLEN CLOTH.

[1 Paine, 435.] [1]

Circuit Court. N. D. New York. Sept. Term, 1825.

BONDS—PENAL ACTION—PRINCIPAL AND SURETY—DIVISION OF DISTRICT.

1. Proceedings by libel were instituted upon a seizure of goods, and a bond given for their appraised value on the delivery of the goods to the claimant. Afterwards the libel was by amendment changed to an information, and the goods were condemned. On an application for an attachment against the obligors in the bond. it was *held*, that although the case was not regularly within the 89th section of the collection law, yet a compliance with the stipulations in the bond might be enforced by attachment against the obligors.

[Cited in U. S. v. Three Hundred Barrels of Whisky, Case No. 16,510; Todd v. The Tulchen, 2 Fed. 603.]

2. And the court *held*, that it made no difference that the obligors were only sureties, and had not themselves received the goods.

3. If the claimant is not a party to the bond, all the obligors are to be deemed principals.

4. The bond was taken in the district court of New-York, and under the statute dividing the district the proceedings were transferred to the district court of the Northern district, and by a subsequent statute to this court. where the condemnation took place. The condition of the bond was to pay the appraised value of the goods into the district court. if they should be condemned in that court: *Held,* that a condemnation in this court had the same effect to forfeit the bond.

[Cited in brief in Charter Oak Life Ins. Co. v. Hosmer. 1 Mackey (12 D. C.) 298.]

At law.

R. Tillotson, Dist. Atty., for plaintiffs.
J. O. Hoffman, for defendant.

THOMPSON, Circuit Justice. On the 19th day of July, in the year 1813, Joseph Kauman, John I. Labouisse, and Nicholas M. Delonguemare. entered into a bond to the United States in the penalty of four thousand four hundred and seventy-six dollars, reciting the seizure and libel of certain articles of merchandise in the district court for the district of New-York; and that the goods in question in this case had, by consent of parties, been appraised at two thousand three hundred and

eighty-eight dollars. and concluding with a condition, that the bond should be void if the obligors or either of them should pay into the district court the said sum of two thousand three hundred and eighty-eight dollars, in case the said goods should, by sentence and decree of the district court, be adjudged to be forfeited or condemned to the use of the United States, within twenty days after the sentence and decree should be pronounced. With some other stipulations in case of acquittal, not necessary here to be noticed. At the last term of this court a rule was granted, requiring the obligors in the bond to show cause why they should not comply with the stipulation contained in the condition of their. bond. That rule has been served only upon Delonguemare, and he appears now, and presents his affidavit, alleging, that he was security only; that he never had the goods in his possession, or the proceeds thereof, and that he has no indemnity.

This appears to be a cause of long standing; and a brief statement of some of the leading circumstances attending it, may be necessary to a right understanding of the decision.

The libel was filed in April, 1813, as upon a seizure made on navigable waters, and the proceedings carried on according to the course of the admiralty. At this time the whole state of New-York was comprised within one district. The seizure having been made in the northern part of the state, it became necessary, under the act of congress dividing the state into two districts, to transfer the proceedings into the district court for the Northern district. And before the determination of the cause, the attorney of that district was appointed the judge of the court, which made it necessary, under another act of congress, to transfer the cause to this court. In September term, 1824, the libel was so amended, as to make it an information in rem, according to the course of the exchequer, in conformity to the rule laid down by the supreme court of the United States in the case of The Sarah, 8 Wheat. [21 U. S.] 391, that in cases of seizures made on land, under the revenue laws, the district court proceeds as a court of common law, according to the course of the exchequer on informations in rem, and the trial of issues of fact is to be by jury; but in cases of seizure on water navigable from the sea by vessels of ten or more tons burthen, the court proceeds as an instance court of admiralty, by libel, and the trial is to be by the court.

The goods in the present. case have been condemned in this court; and the question now arises, whether the effect of the decree or judgment of condemnation can be obtained upon the above mentioned bond; and this question divides itself into two considerations: (1) Whether this court has authority to enforce a compliance with the stipulations in the bond by attachment. (2) Whether Delonguemare under the circumstances of the case is exonerated from his responsibility. It

---

1 [Reported by Elijah Paine, Jr., Esq.]

was undoubtedly supposed when this bond was given, that it was authorized by the provisions of the 89th section of the act of 2d March, 1799, regulating the collection of duties, &c. (3 Laws, Bior. & D. 221 [1 Stat. 695]), and the whole proceeding in the district court, was under the impression, that it was immaterial whether the seizure was upon the land or water; that in both cases it was according to the course of the admiralty; and such is believed to have been the general, if not the universal course, until the decision in the case of The Sarah. It is equally certain, that this was not a case coming within the 89th section of the duty act. But it does not follow, that the bond is therefore void: It was voluntarily given: It was not in violation of any statute nor against good morals, or any general principles of law: It was for a valuable consideration; and I am not aware of any substantial objection to its validity, that could be made in a direct suit upon it at law. The taking of the bond was the act of the court, and not of the United States, or the custom-house officers who were the parties interested in the seizure; and the obligors in the bond, who have thereby taken the property out of the custody of the court, are estopped from setting up any informality in the taking of the bond. If the proceedings in this cause had properly been upon the admiralty side of the court, there could be no question as to the authority of the court to enforce a compliance with this bond in the manner now prayed for; nor do I think any substantial objection now exists.

In the case of The Alligator [Case No. 248], it was held that the district court, by virtue of its general admiralty powers, may deliver property on bail; and whether the security be taken by bond, or stipulation is immaterial; that on such security a summary judgment may be entered; nor is it material whether there be any statute authorizing the delivery on bond or not. The court having jurisdiction of the principal cause, must possess jurisdiction over all the incidents, and may, by monition, attachment, or execution, enforce its decrees, against all who become parties to the proceedings. So, in the case of The Struggle [Id. 13,550] a bond voluntarily given upon the delivery of property on bail, on the application of the claimant, was held good, although the condition was not in conformity to the 89th section of the duty act; and that the obligors in the bond were estopped from contesting the validity of the security.

The case of Burke v. Trevitt [Case No. 2,-163] is still more applicable to the present. It is there held that the district court, as a court of revenue, has jurisdiction of all seizures, under laws of impost, navigation, or trade of the United States, and may entertain suits for the condemnation or acquittal of property so seized; and as an incident to such jurisdiction, may compel a re-delivery of the property, or its value, into the possession of those who may be ultimately entitled to it; and that it was immaterial, whether such a proceeding be enforced by way of original suit, or by a summary decretal order, in a cause already before the court. And the same principle has been fully sanctioned by the supreme court of the United States in the case of Slocum v. Mayberry, 2 Wheat. [15 U. S.] 9, where it is said, that the judiciary act gives to the courts of the United States exclusive cognizance of all seizures made on land and water; and having cognizance of the seizure, may enforce a redelivery of the thing, by attachment or other summary proceeding against the party who should devest such possession. That this court has authority in a summary way, to enforce a compliance with the stipulations in the bond, is fully established by these cases.

2. And the next inquiry is, whether the present is a proper case for the exercise of such authority. Delonguemare seeks to exonerate himself on the ground, that he was surety only in the bond, and has no indemnity, and that he never had any of the proceeds of the goods. If there was any weight in the allegation, that he was only surety, there would be some difficulty under the circumstances of the case, in extending to him any relief on this ground. It does not appear by the bond, who were principals, and who sureties. And if we look into the libel and proceedings in the cause, one Handy, who is no party to the bond, appears to have been the claimant of the goods; and if so, Delonguemare, is as much a principal as any other of the parties named in the bond; all must be deemed principals. The bond is the substitute for the goods; and to permit a party to the bond, to set up that he had not the possession of such goods, would be in effect making such bonds mere nullities; and the surety would in no case be responsible. For it is presumed that the goods always go into the possession of the claimant. It is said, however, that the bond has not been forfeited; that the event has not occurred upon which the obligors in the bond became bound to bring the money into court, because the condemnation was in this court, and not in the district court, according to the letter of the bond. This objection is certainly not well founded. The true sense and legal construction of the bond must be, that the money was to be brought into court within twenty days after the legal and final condemnation of the goods; and when this is pronounced by the court having jurisdiction of the cause, it is all that could be required under the acts of congress in relation to the district courts in this state. This court, for the purpose of hearing and determining the present case, became substituted in the place of the district court. A state of things might have existed, when the obligors in the bond would not have been willing to have been bound by so literal a construction of the bond. Suppose the goods had been condemned in the district

court, and the decree on appeal had been reversed, and the goods acquitted; there would have been a forfeiture of the bond, according to the strict letter; but no one would suppose that the money must, notwithstanding the acquittal, be brought into court. The court must be governed in the interpretation of the bond by its legal effect and operation; and the remedy upon it is the same as if the cause had remained in the district court, and the condemnation taken place there. No sufficient cause to the contrary therefore having been shown, the attachment must be issued.